IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CANAL INSURANCE COMPANY,<br><br>        Plaintiff, Counter-defendant,<br><br>v.<br><br>SHELTER INSURANCE COMPANY,<br><br>        Intervenor, Counter-claimant. | Civil No. 09-456-S-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

Before the Court are motions for summary judgment brought by Plaintiff Canal Insurance Company and Intervenor/Counter-claimant Shelter Insurance Company. Upon a full review of the record, the Court finds that Canal's motion should be granted and Shelter's motion should be denied. An MCS-90 endorsement is not implicated in disputes regarding allocation between insurers. Canal's insurance policy provided no primary coverage for the vehicles involved in the accident, and did not extend coverage to leased vehicles. As there are no conflicting or competing insurance policies, principles of contribution, subrogation, and indemnity are not implicated.

## FACTUAL BACKGROUND

Plaintiff Canal Insurance Company issued an insurance policy (the "Policy")

**Memorandum Decision** - 1

insuring Just Cars Shipping of Olathe, Kansas, for the period beginning May 10, 2007, continuing though May 10, 2008.  *See Canal Policy, Dkt. 38-2* at 3.  The Policy provided for $1,000,000 in liability coverage and listed one truck, a 2003 Ford F-350, as covered.  *Id.* at 4-5.  The Policy also included an MCS-90 endorsement, a federal liability document required by the Federal Motor Safety Carrier Act.  *Id.* at 84.  A change in the Policy, effective August 17, 2007, added a 2007 Ford F-650 to the list of covered automobiles.  *Id.* at 24.  This change also added a document to the Policy entitled "Driver Schedule" which listed one covered driver, Caroline M. Ndungu.  *Id.* at 30.

On December 4, 2007, Intervenor and Counter-claimant Shelter Insurance Company issued an insurance binder, a precursor to the formal issuance of an insurance policy, to Safari Auto Transport of Lenexa, Kansas.  *See Shelter Policy, Dkt. 37-5* at 1.  The binder provided $500,000 of liability coverage and included a blank MCS-90 endorsement.  *Id*.  A 2006 Hino semi-tractor (the "Truck") and a 2007 Kaufman trailer (the "Trailer") were expressly covered by the binder.  *Id.* at 9.  Two Safari employees were listed as covered drivers, Noombey Bitendelo and Mark Hughes.  *Id.* at 5.

On December 29, 2007, Mr. Hughes was driving the Truck and attached Trailer on Interstate 15 near Blackfoot, Idaho.  Mr. Hughes was delivering a shipment of automobiles originating in Phoenix, Arizona, to a drop-off point along the Montana-

**Memorandum Decision** - 2

Canada border. *See Excerpt of Hughes Deposition, attached to Affidavit of Maguire, Dkt. 37-4* at 13. The day was cold and Interstate 15 was icy. Mr. Hughes lost control of the Truck as he attempted to move into the passing lane to avoid a slowing automobile. *Id.* at 19-32. As he did so, the Trailer lost traction and flipped onto its side, landing atop a vehicle that had slipped onto the shoulder due to the icy conditions. *Id.* Mrs. Chris Gray was killed in this collision. *See Settlement Agreement and Release, attached to Affidavit of Maguire, Dkt. 37-6* at 9.

Mr. Hughes alleges that the Truck and Trailer were leased by Safari to Just Cars at the time of the accident. *See Excerpt of Hughes Deposition, supra,* at 44. Though he never had a copy of the purported lease agreement between Safari and Just Cars in his possession, Mr. Hughes claims that he saw the lease on Mr. Bitendelo's laptop at a Kinko's when Mr. Bitendelo printed the agreement. *Id.* at 45-46. At the time of the accident, the Truck bore the U.S. Department of Transportation and Motor Carrier numbers for Just Cars on the driver's door, and was also displaying a sign on the door stating "Leased to Just Cars Shipping." *Id.* at 42-45; *Deposition Exhibit D, Dkt. 37-6* at 1. The Idaho State Police examination report of the accident indicates that Mr. Hughes was driving the Truck for Just Cars. *See Idaho State Police Incident Report, Dkt. 37-6* at 2. The Certificate of Liability Insurance that Mr. Hughes had with him in the cab of the

Truck listed "Just Cars Shipping LLC" as the insured. *See Excerpt of Hughes Deposition, supra,* at 48-49; *Certificate of Liability Insurance, Dkt. 37-6* at 3. Mr. Hughes' daily driver's logs for the period beginning on December 18, 2007 and continuing through December 29, 2007, list "Just Cars Shipping" in the box labeled "Name of Carrier." *See Driver's Logs, Dkt. 37-6* at 4-7. Canal did not receive notice of this accident until January 7, 2009, more than a year after it occurred, and alleges that Just Cars was uncooperative as it attempted to investigate. *See Affidavit of Fleming, Dkt. 38-6* at 2.

On June 18, 2008, Mrs. Gray's husband and surviving children sued Mr. Hughes, Safari, and Just Cars in Idaho state court. Idaho Action #CV08-2411 PI. On March 2, 2010, Shelter, defending the state court matter on behalf of Mr. Hughes and Safari, settled for $600,000. *See Settlement Agreement and Release, supra,* at 9-20. Canal defended the action on behalf of Just Cars, but did not participate in settlement discussions. Shelter reserved the right to seek "subrogation, contribution, or indemnity" against Just Cars and Canal based on its belief that Just Cars leased the Truck and Trailer. *Id.* at 10.

On September 11, 2009, while the Idaho state court matter was pending, Canal filed suit against Just Cars, Mr. Hughes, and the surviving members of the Gray family seeking declaratory relief regarding the rights and relationships of the parties. *See Complaint, Dkt. 1.* Just Cars did not appear, and a Clerk's Entry of Default was entered

**Memorandum Decision** - 4

against it on May 5, 2010. *See Clerk's Entry of Default, Dkt. 31*. Shelter intervened and, along with Mr. Hughes, filed a counter-claim against Canal on June 1, 2010, seeking subrogation, contribution, or indemnity to offset the $600,000 settlement paid the surviving members of the Gray family. *See Counterclaim, Dkt. 34*. On June 4, 2010, this Court, pursuant to the parties' agreed stipulation, dismissed the Complaint with prejudice as to Mr. Hughes and the surviving members of the Gray family, and dismissed Mr. Hughes' counter-claim against Canal with prejudice. *See Order of Dismissal, Dkt. 35*. Coupled with the default of Just Cars, this dismissal left Shelter and Canal as the only parties in this matter. *Id*.

## STANDARD OF REVIEW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

# ANALYSIS

Canal seeks summary judgment on its claim for declaratory relief, asserting that it is not liable for the events in question because (1) it never insured Mr. Hughes, the Truck, or the Trailer, and (2) it did not receive prompt notice of the incident. Ct. Rec. 38-1, 2.

Shelter's counter-claim and motion for summary judgment thereon concedes that Canal did not directly insure Mr. Hughes or the Truck and Trailer involved in the accident. Rather, Shelter contends that Canal should be allocated some or all of the $600,000 settlement it paid the Grays, based on (1) the MCS-90 endorsement, (2) the purported lease agreement, and (3) principles of subrogation, indemnity, and contribution. *See Dft's Brief, Dkt. 37-1* at 4.

An MCS-90 endorsement is not implicated in disputes regarding allocation between insurers. Canal's insurance policy provided no primary coverage for the vehicles involved in the accident, and did not extend coverage to leased vehicles. As there are no conflicting or competing insurance policies, principles of contribution, subrogation, and indemnity are not implicated.

## A. MCS-90 Endorsement

Shelter defended against the Gray's state claim on behalf of Safari Auto, and the matter was settled for $600,000. Shelter argues that this figure represents the $500,000 it

**Memorandum Decision** - 7

was obligated to pay pursuant to Safari's liability policy, supplemented by $100,000 paid pursuant to the MCS-90 endorsement attached thereto. *Id.* at 7. For the purposes of MCS-90 liability, only the $100,000 paid in excess of the $500,000 liability insurance is relevant.

The "primary purpose" of the MCS-90 endorsement "is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 857-58 (9th Cir. 2000) (citing *Harco Nat'l Ins. Co. v. Bobac Trucking Inc.*, 107 F.3d 733, 736 (9th Cir. 1997)). In *Carolina Casualty Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009), it was held that the surety obligations of the MCS-90 are not triggered

> unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent. Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply.

*Id.* at 879. The purpose of the MCS-90 is to make sure an injured member of the motoring public can recover no less than $750,000. "[A]n MCS-90 insurer's duty to pay a judgment arises not from any insurance obligation, but from the endorsement's language *guaranteeing* a source of recovery in the event the motor carrier negligently

injures a member of the public on the highways." *Id.* at 878 (emphasis in original) (collecting cases).

For the MCS-90 endorsement attached to Canal's Policy to be triggered, both prongs of the *Carolina Casualty* test must be met. The first prong is satisfied, as it is clear that the Policy did not provide primary coverage for Mr. Hughes, the Truck, or the Trailer. One of two conditions may satisfy the second prong; either the carrier against whom a member of the public has obtained a judgment has no insurance, or the carrier has insurance that falls short of the federally-mandated minimum. The second prong is arguably met, because Shelter insured Safari Auto, via the insurance binder, for $500,000, less than the federally-mandated minimum of $750,000 for a motor carrier transporting non-hazardous cargo in interstate commerce. *See* 49 U.S.C. § 31139(b)(2); *Carolina Casualty*, 584 F.3d at 874 n.4.

Shelter argues that because both its policy and Canal's policy carried MCS-90 endorsements, there is no reason to favor one over the other, and the $100,000 should therefore be apportioned between the two. This argument fails for two reasons. First, the Grays settled for $600,000. At this point, the MCS-90 ceases to be implicated in any manner, since the motoring public has been protected and recovered damages up to $750,000. *See John Deere*, 229 F.3d at 858 ("[T]he integral purpose of the MCS-90, to

**Memorandum Decision** - 9

protect third party members of the public, is not implicated in a dispute between two insurers.") (citing *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.,* 569 F.2d 304, 313 (5th Cir. 1978)).

Second, Shelter's characterization that it provided $500,000 in liability insurance, with the MCS-90 endorsement providing the further $250,000 required to reach the $750,000 federally-mandated minimum, is misleading. The MCS-90 does not create liability insurance. The back of the MCS-90 endorsement expressly lists the minimum insurance requirements that a carrier must maintain, depending on the type of cargo to be carried. *See Shelter Policy, Attached to Affidavit of Maguire, supra*, at 12. The MCS-90 requires proof that a carrier of non-hazardous cargo has $750,000 in liability insurance; it does not operate as "gap-filler" insurance when the motor carrier has less insurance than that required by federal law. As discussed in *Carolina Casualty*, the MCS-90 is a surety for the public; therefore it cannot satisfy primary liability insurance requirements. The Secretary of Transportation will not register a motor carrier that has insufficient security. 49 U.S.C. § 13902(a)(4).

Integral to this case is the fact that Shelter's MCS-90 endorsement was attached to a policy carrying less than the federally-mandated minimum of $750,000 of primary liability insurance. Such a scenario is illegal under federal law. It is unclear whether an

**Memorandum Decision** - 10

MCS-90 endorsement attached to a policy or binder providing less coverage than that required by federal law is even valid. The language in *John Deere* states that the MCS-90 provides the public a surety against negligence by "*authorized* interstate carriers." 229 F.3d at 853 (emphasis added). Presumably an unregistered, under-insured interstate carrier is not "authorized." Shelter cites no precedent supporting its assertion that a blank MCS-90 endorsement, attached to a policy failing to provide the federal minimum coverage, is valid and can be triggered.

## B. Lease Agreement

It is undisputed that no covered driver or vehicle listed in Canal's Policy insuring Just Cars was involved in the accident. The nature of the relationship, if any, between Just Cars, Safari Auto, and Mr. Hughes is disputed. That relationship, however, is irrelevant as regarding Canal. Even if some form of relationship existed between Just Cars and Safari Auto, the Policy provided no coverage for leased vehicles. Any liability would fall solely on Just Cars.

## C. Contribution, Subrogation, and Indemnity

The Court does not reach the contribution, subrogation, or indemnity arguments raised by Safari. These principles apply only where there exist conflicting or competing insurance policies. That is not the case in this matter because Canal's Policy provided no primary coverage for Mr. Hughes, the Truck, or the Trailer, and did not cover leased

vehicles.

## CONCLUSIONS

An MCS-90 endorsement is not implicated in disputes regarding allocation between insurers. Canal's insurance policy provided no primary coverage for the vehicles involved in the accident, and did not extend coverage to leased vehicles. As there are no conflicting or competing insurance policies, principles of contribution, subrogation, and indemnity are not implicated. The Court will issue a separate Judgment as required by Federal Rule of Civil Procedure 58(a).

DATED: **October 28, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge